PAUL A. CUSHMAN AND PRUDENCE CUSHMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cushman v. Commissioner
Docket No. 13903-80.
United States Tax Court
T.C. Memo 1982-519; 1982 Tax Ct. Memo LEXIS 229; 44 T.C.M. (CCH) 1089; T.C.M. (RIA) 82519; September 13, 1982. Lonnie G. McGee, for the petitioners. Kevin M. Bagley, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: This case was assigned to and heard by Special Trial Judge John J. Pajak pursuant to the provisions of section 7456(c) of the Internal Revenue Code of 1954 and Rule 180. [1] The Court agrees with and adopts the Special Trial Judge's Opinion which is set forth below. [2]
*230 OPINION OF THE SPECIAL TRIAL JUDGE PAJAK, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1978 in the amount of $1,603.00. After a concession by petitioners and by the express consent of the parties pursuant to Rule 41(b), the issues for decision are: (1) whether under section 162 petitioners are entitled to deduct expenses incurred in traveling between petitioner-husband's residence and his place of work; and (2) whether the travel pay received by petitioner-husband is includable in his gross income under section 61. [3]
FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and related exhibits are incorporated herein by *231 reference. Petitioners resided in LaMesa, California, when the petition in this case was filed. Petitioner Paul A. Cushman (petitioner) is a pipefitter and a member of Local 230, Plumbers and Pipefitters United Association (union) in San Diego, California. Petitioner was employed as a pipefitter by Bechtel Power Corporation (Bechtel) for the period from December 12, 1974, through the time of trial at the San Onofre Nuclear Generating Station (SONGS). Petitioner secured his employment through his union. Bechtel had contracted with Southern California Edison to construct two nuclear reactor facilities (Units 2 and 3) at the SONGS site in February, 1974. Construction actually began in May, 1974. When the contract was executed, Unit 2 was originally scheduled to have been completed 64 months from the start of construction and Unit 3 was originally scheduled to have been completed 15 months after completion of Unit 2. During construction of Units 2 and 3, the estimated time of completion was updated once every six months based on actual construction experience. As of the time of trial, Bechtel's construction work on Units 2 and 3 had not yet been completed. During the entire *232 period of construction on Units 2 and 3, Bechtel had substantial labor needs requiring pipefitters among others. When Bechtel required pipefitters, an officer of Bechtel would contact a representative of the union and request that a certain number of workers be dispatched to the SONGS site. These employees were hired by Bechtel on an "as needed" basis. Such an employee could lose his job at the SONGS site by a layoff pursuant to a reduction-in-force, by being terminated for cause, or by a voluntary termination. The decision to lay off any given employee pursuant to a reduction-in-force was based on criteria established by Bechtel and was in the sole discretion of Bechtel. In making layoffs, the job performance of any given employee was the most critical factor in determining whether that employee would be laid off. In short, the worst workers would be laid off first and the better workers would be laid off last. In determining which employees would be laid off and which would stay, no consideration was given to the employee's seniority on the job, seniority with the union, or union status (i.e., local member vs. member working on a "travel card"). Representatives of Bechtel *233 met periodically with representatives of the union to discuss construction progress and anticipated labor requirements. Bechtel currently administers a maintenance and repair contract with respect to nuclear reactor Unit 1 and employs trade employees, such as petitioner, to do the work under the contract. Bechtel has similar contractual arrangements regarding maintenance on Units 2 and 3 when construction on those units is completed. It is conceivable that trade employees, such as petitioner, currently working at the SONGS site will continue to be so employed, even after the initial construction projects have been completed. When petitioner was hired to work at the SONGS site, he claimed he had "no indication" how long his employment by Bechtel would last. Petitioner never asked either his union or Bechtel how long he could expect to be employed at SONGS. No one from the union told petitioner that Bechtel was hiring him on a temporary basis. No representative of Bechtel ever told petitioner, or any other trade employee, that he was being hired on a temporary basis. An official of petitioner's union acknowledged that the duration of the SONGS construction project was not *234 a typical job and said that: "I don't know of a job in town that has ever lasted the length that that one has lasted." Petitioner candidly testified as follows: "I thought I would have a job as long as I didn't get fired and as long as I did my job." A trade employee, such as petitioner, could expect to be employed at the SONGS site by Bechtel as long as work was available and as long as the employee maintained a good job performance. During the entire period of petitioner's employment, Bechtel had substantial actual and forecasted labor requirements for pipefitters. Bechtel highly regarded petitioner's job performance as a pipefitter as indicated by the fact that he was never laid off.
Pursuant to the union agreement under which petitioner was employed at the SONGS site, petitioner was entitled to $16.00 in travel pay for every day he worked. The amount was based on the distance from the job site to the union hall. Petitioner would have received the same amount of travel pay regardless of where he actually resided. During 1978, petitioner resided 70 miles from the SONGS site. He received travel pay from Bechtel in the amount of $3,776.00 in 1978, and reported it as income *235 on his 1978 Federal income tax return. Petitioner incurred $3,776.00 in expenses in traveling to and from the SONGS job site during 1978. He deducted this amount on his return for that year. Respondent disallowed the $3,776.00 deduction claimed for travel and made a minor adjustment for depreciation which petitioner has conceded. OPINION The essential facts herein do not differ from those in Portillo v. Commissioner,T.C. Memo. 1982-518, issued on the same day that this opinion was issued, although there are some differences in the details. As we noted in Portillo v. Commissioner,supra, counsel for the parties agreed to try four test cases at one session of this Court, separating cases into groups based upon the period of time that was worked. [4] Petitioner was employed at the SONGS site for over 85 months at the time of trial. We find that petitioner's employment at SONGS was indefinite during the taxable year. We are satisfied that for the reasons set forth in Portillo v. Commissioner,supra, petitioner is not entitled to deduct his daily travel expenses under section 162 and is required, as he did, to report *236 his travel pay in his gross income under section 61. Accordingly, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954 in effect during the taxable year, unless otherwise indicated. All references to Rules are to the Tax Court Rules of Practice and Procedure. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable in this case.
3. By stipulation, the following parties have agreed to be bound to the resolution of the issues in this case when the decision becomes final: Betourne v. Commissioner, D.N. 507-81; Paplow v. Commissioner, D.N. 10413-81 and D.N. 10526-81; Cala v. Commissioner, D.N. 10415-81; Larriva v. Commissioner, D.N. 10524-81; Conditt v. Commissioner, D.N. 10527-81; Hook v. Commissioner, D.N. 14345-81; Keller v. Commissioner, D.N. 14793-81; and Sanchez v. Commissioner, D.N. 22979-80.↩
4. We believe this must have been at the insistence of petitioner's counsel since respondent makes no differentiation on this basis. When we consider that each of the different periods was sufficiently long in duration to support the same determination, we believe that the distinction made by petitioner's counsel is a differentiation without meaning. In fact, petitioner's counsel in his brief on behalf of the four test cases and one related case draws no such distinction. As we indicated in Portillo v. Commissioner,T.C. Memo. 1982-518↩, we believe one test case would have been sufficient.